IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STATON HOLDINGS, INC. <br> d/b/a STATON WHOLESALE <br> and ALL EIGHTS, L.L.C d/b/a <br> INFOEIGHTS, <br><br> Plaintiffs, <br><br> v. <br><br> FIRST DATA CORPORATION, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br><br><br><br><br><br> CIVIL ACTION NO. <br> 3:04-CV-2321-P |

## **MEMORANDUM OPINION AND ORDER**

Now before the Court are (1) Defendant First Data Corporation's ("First Data" or "Defendant") Motion to Dismiss, filed January 3, 2005; (2) Plaintiff Staton Holdings, Inc., d/b/a Staton Wholesale and All Eights, L.L.C. d/b/a InfoEights' (collectively, "Plaintiffs") Motion for Leave to File Response to Defendant's Reply in Support of Motion to Dismiss, filed February 25, 2005; and (3) Plaintiffs' Motion to File Fourth Amended Complaint, filed February 25, 2005. After careful consideration of the Parties' briefing and the applicable law, the Court hereby DENIES Defendant's Motion to Dismiss, DENIES Plaintiffs' Motion for Leave to File Response to Defendant's Reply in Support of Motion to Dismiss, and GRANTS Plaintiffs' Motion for Leave to File Fourth Amended Complaint.

## **FACTS**

Plaintiff Staton Holdings, Inc. d/b/a Staton Wholesale ("Staton") is a business based in Dallas, Texas. Since the early 1990s, Staton has been the assignee and exclusive end-user subscriber

1

of the toll-free telephone number (800) 888-8888. In April 1998, when the 888 prefix became available, Staton requested and was assigned the number (888) 888-8888. Staton had rights to use both numbers pursuant to an agreement with MCI Worldcom Communications, Inc. ("MCI").

In April 2000, Staton incorporated a company called All Eights, L.L.C. d/b/a InfoEights ("InfoEights"), a company through which it intended to earn revenue using the (888) 888-8888 number as the focal point of its marketing campaign. Specifically, Staton intended to use the (888) 888-8888 number for the purpose of entering the "voice portal market." This market offers customers access to "virtually every conceivable piece of information by simply calling a toll-free number." (Pls.' Third Am. Original Compl. ¶ 10.) ("Compl.") As part of its business, Staton intended to assign to InfoEights the rights to use the (888) 888-8888 number. To facilitate this assignment, Staton had to first cease daily use of the (888) 888-8888 number as a toll-free fax number. Staton began using a new fax number beginning with its 2001 catalog.

Plaintiffs contend that on or about October 31, 2000, Defendant called MCI representative, Denise Nilson, and misrepresented to her that (888) 888-8888 was not terminating to an active location and that a recording indicated that the number was not in use. Defendant asked Ms. Nilson to reserve the number for Defendant's own use. On January 2, 2001, Defendant again contacted MCI representative, Denise Nilson, about being assigned the rights to use the number. Thereafter, the number was transferred to Defendant.

On or about April 10, 2001, Defendant changed its telephone service provider from MCI to Sprint and submitted a RespOrg (Responsible Organization) Change Authorization to effect the change. In that form, Defendant allegedly misrepresented that Defendant was the "exclusive end user subscriber" of (888) 888-8888. Plaintiffs allege that Defendant knew it was not the subscriber,

2

and knew that the number was actually being used by another.

Plaintiffs further note that by signing the RespOrg form, Defendant assumed "all liability for the misappropriation of traffic of any other end user subscriber with regard to the Toll Free number(s) listed."

Because Staton had not been using the (888) 888-8888 number itself, Staton did not become aware of the disconnection and transfer of the number until June 14, 2001. When contacted, Defendant refused to return the rights to the number to Staton.

Plaintiffs contend that Defendant engaged in a scheme to unlawfully obtain rights to the phone number. Plaintiffs allege that Defendant intentionally misrepresented to MCI that the number was no longer active in order to have the number transferred to Defendant. Defendant then changed its telephone service provider to Sprint, thereby making it impossible for MCI to return the number to Plaintiffs.

## **DISCUSSION**

**I.     MOTION FOR LEAVE TO FILE SURREPLY**

Plaintiffs filed a Motion for Leave to File Response to Defendant's Reply in Support of Motion to Dismiss ("Motion to File Surreply") on February 22, 2005. After reviewing all the briefing before the Court, the Court finds that Defendant did not raise any new arguments in its reply brief to necessitate the filing of a surreply. Further, Plaintiffs' surreply is merely a recitation of the arguments made in their response and provides nothing new for the Court to consider. The motion to dismiss briefing before the Court sufficiently addresses the issues raised. Finally, even if the Court did consider the arguments made in Plaintiffs' surreply, the outcome of this Order would be unaffected. For these reasons, Plaintiffs' Motion to File Surreply is hereby DENIED.

## II.   MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT.

Plaintiffs also seek leave of Court to file a Fourth Amended Complaint to correct some of the deficiencies contained in the Third Amended Complaint.  At the time their motion was filed, the pleadings deadline had not yet passed.  Therefore, the Court hereby allows Plaintiffs leave to amend their Complaint and Plaintiffs' Motion for Leave to File Fourth Amended Complaint is hereby GRANTED.

## III.   MOTION TO DISMISS.

### A.   Rule 12(b)(1) - Standing.

Defendant contends that All Eights lacks standing to bring this lawsuit and should be dismissed pursuant to Rule 12(b)(1).  Specifically, Defendant argues that All Eights suffered no injury because Staton never assigned the rights to (888) 888-8888 to All Eights.  In their Complaint, Plaintiffs simply allege that Staton intended to assign the rights to All Eights.

In response, Plaintiffs argue, without citing any legal authority, that All Eights has standing because, as the prospective assignee of the number, All Eights' interests were inextricably intertwined with the rights of Staton.

To establish standing, a plaintiff must allege facts demonstrating that he suffered an injury in fact that is both concrete and particularized, and actual or imminent, not conjectural or hypothetical.  *See United States v. Hays*, 515 U.S. 737, 743 (1995).  In this case, Plaintiffs allege that Staton incorporated InfoEights for the specific purpose of utilizing the (888) 888-8888 phone number to generate revenue as a call-in information source for consumers.  (Compl. ¶¶ 9-10.) Plaintiffs pled specific facts detailing InfoEights' anticipated revenue from this business.  (Compl. ¶ 11.)  Plaintiffs allege that Staton intended to imminently assign the rights to the (888) 888-8888

number to InfoEights. (Compl. ¶¶ 10, 12.) To support this allegation, Staton explains that it had already reserved trademarks and domain names in anticipation of InfoEights' imminent use of the phone number. (Compl. ¶ 10.)

In light of these facts, the Court finds that Plaintiffs have pled sufficient allegations of a concrete and particularized injury to InfoEights that is actual and imminent, and therefore InfoEights is entitled to standing.

> B.  Rule 12(b)(2) - Failure to State a Claim.
>
>> 1.  Breach of Contract/Express Assumption of Liability.

Plaintiffs' breach of contract claim is based on the theory that Defendant expressly assumed liability for Plaintiffs' damages when it signed the RespOrg Change Authorization form. Plaintiffs rely on a particular provision contained in the form which states that Defendant "assumes all liability for the misappropriation of traffic of any other end user subscriber with regard to" the phone number (888) 888-8888. (Compl. ¶¶ 22-23.)

Defendant maintains that the RespOrg Change Authorization form is not a contract between Plaintiffs and Defendant. Rather, Defendant argues, it is merely a statement by Defendant to the new telephone service provider - in this case, Sprint - authorizing the change in Defendant's service provider from MCI to Sprint. Defendant explains that the purpose of the form is to prevent "slamming" - the unauthorized shift in service provider from one carrier to another. (Mot. at 5.)

It is undisputed that Plaintiffs are not a party to the RespOrg form. However, "[a] third party may recover on a contract made between other parties [ ] if the parties intended to secure a benefit to that third party, and [ ] if the contracting parties entered into the contract directly for the third party's benefit." *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002).

Defendant also argues that the "plain reading of the language in this form demonstrates that Staton is not the party intended to be protected by the RespOrg form, Sprint is." (Mot. at 6.) Defendant argues that this language prevents the unauthorized shift of traffic from one telecommunications provider to another, and ensures that Sprint is not held liable for asserting itself as the carrier when the end user did not intend for Sprint to be the carrier. (Mot. at 6.)

Plaintiffs have alleged that certain language contained in the document was intended to benefit Plaintiffs. Therefore, Plaintiffs have pled sufficient facts to state a cause of action for breach of contract. Therefore, the Court hereby DENIES Defendant's motion to dismiss Plaintiffs' breach of contract claim.

### 2. Fraud.

Under Texas law, the elements of a fraud cause of action are: (1) a material representation; (2) that was false when made; (3) the speaker either knew it was false or asserted it without knowledge of its truth; (4) the speaker intended that it be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result. *See Malacara v. Garber*, 353 F.3d 393, 403-04 (5th Cir. 2003). Furthermore, under Rule 9(b), a plaintiff must plead allegations of fraud with particularity. *See* Fed. R. Civ. P. 9(b). This essentially requires the plaintiff to plead the circumstances of the alleged fraud with sufficient precision to apprise the defendant of the nature of the claim and the acts or statements relied upon by the plaintiff as constituting the fraud. *See* C. Wright & A. Miller, 5A Federal Practice and Procedure § 1297 (3d ed. 2004); *see, e.g., Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994). Many courts have interpreted this as requiring the plaintiff to specifically plead the "time, place and contents of the false representations, as well as the identity of the person making

6

the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Tech., Inc.,* 112 F.3d 175, 177 (5th Cir. 1997).

In this case, Defendant argues that Plaintiffs have not pled a fraud cause of action because Plaintiffs have not accused Defendant of making any misrepresentation *to Plaintiffs*. Defendant also points out that there is no allegation that Plaintiffs relied on Defendant's alleged misrepresentations. Rather, the alleged misrepresentations were made to and relied upon by a third party - MCI.

Plaintiffs respond by arguing that Defendant's argument is hypertechnical. Plaintiffs maintain that their detailed allegations outlining Defendant's fraudulent scheme sufficiently state a fraud claim.

Plaintiffs provide a detailed description of a deceptive scheme orchestrated by Defendant that caused injury to Plaintiffs. Plaintiffs allege that Defendant intentionally made material misrepresentations to a third party with the desire that the third party act in reliance thereon and which foreseeably would and did cause injury to Plaintiffs. Further, Plaintiffs allege in their Fourth Amended Complaint that Defendant concealed its (prior) fraudulent conduct in conversations with MCI and Sprint and, through them, to Plaintiff, whose identity was disclosed to Defendant. (Fourth Am. Compl. ¶¶ 17, 23(3), 26(3).) For these reasons, Defendant's motion to dismiss Plaintiffs' fraud claim is hereby DENIED.

    **3.    Conversion.**

"Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with the true owner's rights." *Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 762 (Tex. App. - Texarkana 1996), aff'd in part and rev'd in part, 939 S.W.2d 146 (Tex. 1997). Under Texas law, conversion is established by proving that: (1) the plaintiff owned, had legal

possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner; and (3) defendant refused plaintiff's demand for the return of the property. *See In re Aurora Natural Gas,* L.L.C., 312 B.R. 318, 328 (N.D. Tex. 2004); *Russell v. American Real Estate Corp.,* 89 S.W.3d 204, 210 (Tex. App. - Corpus Christi, 2002, no pet.).

### a. Abandonment of the Phone Number.

First, Defendant argues that Plaintiffs abandoned their proprietary right, if any, in the telephone number by "retiring" the number from daily use as their fax number. (Mot. at 14.) However, Defendant provides no argument or evidence proving that the term "retire" means, as a matter of law, that Plaintiffs abandoned their proprietary right in the number. In fact, Plaintiffs' Third Amended Complaint states that Plaintiffs retired their *use* of (888) 888-8888 as a fax number, not that Plaintiffs retired their right to use the number. (Compl. ¶ 12.) Furthermore, Plaintiffs' Complaint specifically explains that Plaintiffs continued to receive calls at the number and that Plaintiffs continued to be billed for calls to that number for months after Defendant made its misrepresentations to MCI - thereby negating the abandonment theory. (Compl. ¶ 14.)[1]

Defendant also maintains that "Plaintiffs admit they retired the [(888) 888-888 fax] number and that MCI disconnected the number by mistake." (Mot. at 14; Reply at 5.) From this, Defendant argues that "[w]ithout alleging more specific facts regarding the timing and sequence of those events, Plaintiffs have not sufficiently alleged that they had a right to use the (888) 888-8888 number when it was assigned to First Data." (*Id.*)

Rule 8 of the Federal Rules of Civil Procedure requires the plaintiff to plead a short and plain

---

[1] Not surprisingly, Plaintiffs' proposed Fourth Amended Complaint abandons the use of the word "retire."

8

statement of his claim. *See* Fed. R. Civ. P. 8(a)(3). Plaintiffs allege they retired their use of the (888) 888-8888 number as a fax number. (Compl. ¶ 12.) Plaintiffs subsequently allege that Defendant's misrepresentations to MCI about the status of the number were made to induce MCI to transfer the number to Defendant. (Compl. ¶ 14.) Finally, Plaintiffs claim that MCI "cancelled the (888) 888-8888 number from use by Plaintiffs." (Compl. ¶ 20.) Plaintiffs' Complaint sets forth facts sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). There is no requirement that Plaintiffs plead the specific dates of the events in this case.

### b. Can a Telephone Number Be the Subject of a Conversion Claim?

Defendant also argues that Plaintiffs never had a proprietary interest in the telephone number as a matter of law because only a telecommunications carrier has such an interest. (Mot. at 14.) In response, Plaintiffs cite to two bankruptcy cases that recognize right of use as the most important aspect of possession. (Resp. at 20.)

At the core of Plaintiff's conversion claim is the supposition that a telephone number is an appropriate subject for a conversion claim. The issue of whether a telephone number can be the subject of a conversion claim is an issue of first impression in the state of Texas (and nearly everywhere else), yet neither side has offered any meaningful analysis on the issue. While conducting its own research on the issue, the Court has found that the question of whether an intangible property interest, such as a telephone number, is the proper subject for a conversion claim is an issue mired in confusion.

As stated *supra*, conversion is the wrongful exercise of dominion over the personal property of another. *See Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 982 (S.D. Tex. 1997).

9

Historically, the tort provided a remedy for the loss of any tangible object that could be lost and found. *See* Val D. Ricks, *The Conversion of Intangible Property: Bursting the Ancient Trover Bottle with New Wine*, 1991 B.Y.U. L. Rev. 1681, 1683-86 (1991). As society became more technologically advanced, the value of intangible property rights became apparent and consequently subject to theft. *See id.* at 1698-99. Thus, courts began to "relax" the rule to allow actions for conversion of intangible property rights in limited circumstances. *See Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1569 (S.D. Tex. 1996).

For example, the Texas Supreme Court has recognized a conversion claim involving intangible property merged into a document, such as a lease document. *See Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex. 1982). While some courts have held that the right to a conversion claim is limited only to those cases where intangible rights have been merged into a document and there has been a conversion of the document,[2] Texas has not expressly adopted the Restatement's "merged with" requirement. *See* annotations to Restatement (Second) Torts § 242 (1965).

A telephone number, although a form of property, is not tangible property. Rather, it is a series of numbers assigned by a telephone company to a telephone. Plaintiffs have pled in their Complaint that this particular telephone number was of immense value to Plaintiffs' business because it had the potential to be highly visible and recognizable to customers, thereby providing Plaintiffs with a competitive edge. (Compl. ¶ 8.) In light of the undisputed fact that this particular phone number was of immense (potential) value to Plaintiffs and others, the Court hereby finds that

---

[2] *See Sefton v. Jew,* 201 F. Supp. 2d 730, 751 (W.D. Tex. 2001) (service mark); *CICCorp, Inc. v. AIMTech Corp.*, 32 F. Supp. 2d 425, 430 n.9 (S.D. Tex. 1998) (internet webpage address); *W.G. Pettigrew v. Borden, Inc.*, 976 F. Supp. 1043, 1057 (S.D. Tex. 1996) (customers); *Neles*, 974 F. Supp. at 982; *Pebble Beach*, 942 F. Supp. at 1569 (golf course design); *Express One Int'l Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App. - Dallas 2001, no pet.) (trademark rights).

a cause of action for conversion may lie. The Court does note, however, that it is not suggesting that all telephone numbers may be subject to a cause of action for conversion. Defendant's Motion to Dismiss Plaintiffs' conversion claim is hereby DENIED.

### 3.     Tortious Interference with an Existing Contract.

To establish a claim for tortious interference with an existing contract, Texas law requires that (1) the plaintiff had a valid contract; (2) the defendant willfully and intentionally interfered with the contract; (3) the interference was a proximate cause of the plaintiff's injury; and (4) the plaintiff incurred actual damage or loss. *See Prudential Ins. Co. v. Financial Rev. Servs.*, 29 S.W.3d 74, 77-78 (Tex. 2000).

With respect to the first element, Plaintiffs sufficiently allege that Staton had a valid contract with MCI when it states in Paragraph 7 of its Complaint that "[Staton] had the rights to use the (800) 888-8888 and (888) 888-8888 numbers pursuant to its agreement with MCI . . ." (Compl. ¶ 7.)

Defendant argues that Plaintiffs have not properly pled the second element of willful and intentional interference. Defendant notes that under Texas law, a knowing inducement means that the defendant takes an active role in persuading a party to a contract to breach it. *See John Paul Mitchell Sys. v. Randall's Food Markets, Inc.,* 17 S.W.3d 721, 731 (Tex. App. - Austin 2000, pet. denied) (citing *Davis v. HydePro, Inc.*, 839 S.W.2d 137, 139 (Tex. App. - Eastland 1992, writ denied). "It is necessary that there be some act of interference or of persuading a party to breach, for example, by offering better terms or other incentives, for tort liability to arise." *Id.* Defendant argues that Plaintiffs have not pled that Defendant knew Staton had a contract with MCI regarding the number and intended to interfere with that contract.

Plaintiffs respond by arguing that they have satisfied this element by pleading that Defendant

11

knowingly misrepresented to MCI that Defendant had investigated the status of the phone number with the intent to induce MCI to reassign the number to Defendant.  (Compl. ¶¶ 13-14, 17, 29(1).)

Upon close inspection of both the Third and Fourth Amended Complaints, the Court finds that Plaintiffs have sufficiently pled the element of intentional interference.  Specifically, in Paragraph 17, Plaintiffs state that Defendant made misrepresentations to MCI personnel about Plaintiffs' phone number with the desire that MCI would transfer the number to Defendant, and Defendant knew or should have known that such a change would result in injury to Staton, the rightful user of the number.  (Compl. ¶ 17.)

Plaintiffs have also sufficiently alleged that MCI did rely on these representations and, as a result, did reassign the number to Defendant.  (Compl. ¶ 7.)  Plaintiffs' Complaint indicates that InfoEights would have continued using the number.  (Compl. ¶ 10.)  Plaintiffs further sufficiently allege that these misrepresentations caused Plaintiffs to abort their business plan and consequently, to lose business opportunities and money.  (Compl. ¶ 32.)

Because Plaintiffs have pled each of the elements of a tortious interference claim, Defendant's motion to dismiss that claim is hereby DENIED.

**E.     Tortious Interference with a Prospective Contract.**

In Texas, the elements of a claim for tortious interference with a prospective contract are: (1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's

interference. *See Allied Capital Corp. v. Cravens*, 67 S.W.3d 486, 491 (Tex. App. - Corpus Christi 2002, no pet.)

In their Complaint, Plaintiffs allege that they received an unsolicited written offer of $10 million from the company PhoneRun for assignment of the rights to use the (888) 888-8888 number. (Compl. ¶ 11.) Rather than speculate on other offers in excess of $10 million they may have received in the future, Plaintiffs base their damage claim on the $10 million offer.

Defendant argues that Plaintiffs have not pled any facts to establish that Defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct.

For a plaintiff to prevail on a claim for tortious interference with a prospective contract, the plaintiff must establish that the defendant desired to bring about the contractual interference or knew that the interference was certain or substantially certain to occur as a result of his action. *See* Restatement (Second) Torts § 766B cmt. d. A cause of action exists "if the actor acts for the primary purpose of interfering with the performance of the [prospective] contract, and also if he desires to interfere, even though he acts for some other purpose in addition. The rule . . . applies also to intentional interference . . . in which the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action." Restatement (Second) Torts § 766 cmt. j. (which is incorporated into Section 766B through cmt. d). "The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." *Id.*

Thus, the intent element requires proof that the defendant knew of the existence of the

13

prospective contract. Defendant cites *Texas Oil Co. v. Tenneco*, 917 S.W.2d 826, 834 (Tex. App. - Houston [14th Dist.] 1994), *rev'd on other grounds*, 958 S.W.2d 178 (Tex. 1997), which held that because the defendant did not know there was a reasonable probability of a contract between the plaintiff and a third-party, there could be no liability.

Plaintiffs argue that *Tenneco* is inapposite to this case because the defendant in that case did not engage in an improper act. While this may be true, the two elements are not intertwined. A plaintiff must establish both that the interference is intentional and that the interference is improper. *See* Restatement (Second) Torts § 766B cmt. d. In *Tenneco,* the court expressly rejected the plaintiff's claim because the plaintiff failed to establish that the defendant desired to interfere with the plaintiff's probable contractual relationship(s) or believed interference was substantially certain to result from its actions. *See Tenneco*, 917 S.W.2d at 834. The same is true in this case with respect to the sale of the phone number to a third party. Plaintiffs have not pled any facts to indicate that Defendant desired to interfere with such a contract. However, Plaintiffs have pled facts that, if true, would establish that Defendant knew about the prospective contractual relationship between Staton and InfoEights for assignment of the phone number and that Defendant desired to interfere with that probable contractual relationship. (Compl. ¶¶ 19, 23(3), 26(3).)

For these reasons, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' claim for tortious interference with a prospective contract and Defendant's Motion to Dismiss is hereby DENIED.

It is SO ORDERED, this 11th day of May 2005.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE