IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STATON HOLDINGS, INC.<br>d/b/a STATON WHOLESALE<br>and ALL EIGHTS, L.L.C d/b/a<br>INFOEIGHTS,<br><br>    Plaintiffs,<br><br>v.<br><br>FIRST DATA CORPORATION,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>3:04-CV-2321-P |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant First Data Corporation's ("First Data") Motion to Stay Proceedings, filed July 15, 2005. After careful consideration of the Parties' briefing and the applicable law, the Court hereby DENIES First Data's motion.

## BACKGROUND

Plaintiff Staton Holdings, Inc. d/b/a Staton Wholesale ("Staton") is a business based in Dallas, Texas. According to Staton's Complaint, in 1998 MCI Worldcom Communications, Inc. ("MCI") assigned the phone number (888) 888-8888 to Staton.

In April 2000, Staton incorporated a company called All Eights, L.L.C. d/b/a InfoEights ("InfoEights"), a company through which it intended to earn revenue using the (888) 888-8888 number as the focal point of its marketing campaign. As part of its business, Staton intended to assign to InfoEights the rights to use the (888) 888-8888 number. To facilitate this assignment, Staton had to first cease daily use of the (888) 888-8888 number as a toll-free fax number. Staton began using a new fax number beginning with its 2001 catalog.

1

In 2001, MCI negligently disconnected Plaintiff's phone number. Thereafter, First Data requested that MCI assign the number to it, which MCI did. First Data then changed its telephone service provider from MCI to Sprint.

Because Staton had not been actively using the (888) 888-8888 number itself at the time it was disconnected, Staton did not become aware of the disconnection and transfer of the number until June 14, 2001. When contacted, First Data refused to return the rights to the number to Staton.

On December 17, 2002, Staton filed a formal complaint with the FCC against MCI and Sprint (common carriers) concerning the improper disconnection and transfer of the telephone number. (Def.'s App. at 92.)

On May 12, 2004, the FCC issued an order holding that MCI had negligently disconnected the (888) 888-8888 number, but that there was no evidence of willful misconduct by MCI. (Def.'s App. at 86, ¶¶ 15-16.) The FCC ordered MCI to pay Staton $1,000.00 The FCC further noted that there was no evidence in the record to suggest that First Data was "anything other than a completely innocent third party." (Def.'s App. at 89, ¶ 26.) The FCC concluded that Staton had failed to prove that Sprint engaged in any misconduct. (Def.'s App. at 86, ¶¶ 22-23.)

Staton filed a motion for reconsideration, arguing that the FCC failed to conduct a full investigation into the facts of the case, as required by statute. Staton alleges that the FCC issued its ruling based solely on limited discovery and a status conference. (Def.'s App. at 92.) Staton alleges it was not allowed to cross-examine MCI's witnesses. (Def.'s App. at 92-93.) The FCC has not yet ruled on the motion for reconsideration.

In October 2004, Staton filed this lawsuit against First Data. Staton contends in this lawsuit that First Data engaged in a scheme to unlawfully obtain rights to the phone number. Staton alleges

that First Data intentionally misrepresented to MCI that the number was no longer active in order to have the number transferred to First Data. Staton contends that First Data then changed its telephone service provider to Sprint, thereby making it impossible for MCI to return the number to Staton.

## **DISCUSSION**

In its motion to stay, First Data contends that the Court should invoke the doctrine of primary jurisdiction and find that Staton should not be permitted to proceed with a simultaneous administration action and a federal court lawsuit. (Def.'s Mot. at 4.) The doctrine of primary jurisdiction is a judicially-created doctrine whereby a court of competent jurisdiction may stay an action pending resolution of some portion of the action by an administrative agency. *See Penny v. Southwestern Bell Telephone Co.*, 906 F.2d 183, 187 (5th Cir. 1990); *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988). The doctrine is invoked when a claim requires the resolution of issues that are within the special competence of an administrative body. *See Wagner*, 837 F.2d at 201. In such a case, the judicial process may be suspended pending resolution of such issues by the administrative body. *See id.* Application of the doctrine is especially appropriate where uniformity of certain types of administrative decisions is desirable or where there is a need for the specialized knowledge or expertise of the agency. *See id.* The doctrine is intended to ensure that the administrative agency is not bypassed in a matter that the legislature has specially committed to it. *See Penny*, 906 F.2d at 187.

There is no fixed formula for applying the doctrine of primary jurisdiction and each case must be examined individually to determine whether it would be aided by the doctrine's application. *See id.* However, a court considering deferring to an agency's jurisdiction must weigh the benefits

of obtaining the agency's aid against the need to resolve the litigation expeditiously and may defer only if the benefits of agency review exceed the costs imposed on the parties. *See id.*

The Fifth Circuit has established a three-part test for determining whether application of the primary jurisdiction doctrine is appropriate in a particular case. In *Northwinds Abatement, Inc. v. Employers Ins. of Wausau,* 69 F.3d 1304, 1311 (5th Cir. 1995), the court held that the doctrine applies where: "(1) the court has original jurisdiction over the claim before it; (2) the adjudication of that claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body."

Staton does not dispute that the Court has diversity jurisdiction over Staton's state law claims. Thus, the Court must consider whether the adjudication of Staton's claims against First Data requires the resolution of some predicate issue or the making of some preliminary finding by the FCC.

First Data argues that Staton's claims in this proceeding depend on the outcome of the FCC proceeding because Staton's damage claim in this case assumes that the FCC ruling will not be disturbed. First Data contends that if the FCC does grant the relief requested, then any federal court award would result in "an impermissible, multi-million dollar, windfall for Staton." (Def.'s Mot. at 6-7.) Thus, First Data argues, Staton cannot be allowed to use the FCC proceeding to procure the return of the number while simultaneously asking this Court to award damages based on their inability to use the number to start their new business. Thus, the FCC determination on the motion to reconsider is a necessary prerequisite to any award to Staton by this Court.

First, this fraud case is not predicated on the FCC's ruling on Staton's motion for

4

reconsideration. Staton's motion for reconsideration involves statutory interpretation and the issue of whether a full opportunity was given to Staton to develop its case before the FCC regarding Sprint and MCI's liability. Resolution of that issue will not affect the fraud and conversion issues raised against First Data in this proceeding.

Furthermore, the relief requested in the administrative ruling - the return of the number to Staton - would not affect this Court's ability to assess damages, if any, caused by First Data's alleged fraud/conversion. Regardless of whether the number is returned, Staton is required to demonstrate to this Court that it lost business opportunities.

However, even if the federal case was predicated on issues raised in the reconsideration motion filed in the FCC case, the doctrine of primary jurisdiction does not contemplate courts staying their proceedings after the rulings on the predicate issues have been made. The FCC has issued its preliminary ruling. Post-judgment motions and appeals could linger for years. It is reasonable for Staton and the Court to continue to operate under the assumption that the FCC's ruling is final and will not be disturbed. Should the FCC grant Staton's motion for reconsideration, and should the FCC then reverse its underlying ruling in light of evidence newly presented, the Court will address the Parties' concerns and the FCC ruling's effects on this case at that time.

Additionally, if the FCC does grant the motion for reconsideration, the Parties will likely have to conduct discovery and participate in another hearing, the resolution of which could be years away. Staying this case pending resolution of the issues in the administrative hearing would not promote the efficient resolution of disputes.

Finally, the Court notes that the FCC has already resolved the purported predicate issues and issued its preliminary findings. The FCC ruled on May 12, 2004 that the telephone number should

remain with First Data and would not be returned to Staton. (Def.'s App. at 81-90.) The FCC has applied its expertise to this matter and issued a ten-page order that provides the Court with guidance as to its reasoning.

First Data argues that because the FCC has special expertise in determining rights to specific toll-free numbers, the Court should stay this case pending the outcome of the reconsideration motion before the FCC. (Def.'s Mot. at 8-9.) This argument is unpersuasive for several reasons. First, invocation of the primary jurisdiction doctrine may be appropriate where there is a *need* for the specialized knowledge or expertise of an agency. However, in this case the Court does not need the FCC to make determinations in its proceedings before the Court can resolve the tort issues before it. The FCC's special expertise in resolving disputes against common carriers and in determining rights to use toll-free numbers will not assist this Court in determining whether First Data, who is not a common carrier, committed fraud against Staton, thereby causing Staton damages.

First Data also argues that (1) Staton has taken inconsistent positions in its pleadings before the FCC and this Court, and (2) the FCC has made findings of fact that are inconsistent with Staton's positions in this Court proceeding, and that somehow this warrants invocation of the primary jurisdiction doctrine. (Def.'s Mot. at 7-8.) However, First Data has not offered any authority to demonstrate that this issue is relevant to the analysis of primary jurisdiction. As Staton points out, any inconsistent position(s) taken by Staton in its pleadings before the FCC and this Court would be addressed more appropriately under some other legal theory at the summary judgment stage. Likewise, any factual findings made by the FCC concerning First Data's participation in this dispute would be addressed more appropriately under some other legal theory at the summary judgment

stage. (Pl.'s Resp. at 11-12.)[1]

For these reasons, the Court hereby DENIES First Data's Motion to Stay Proceedings.

It is SO ORDERED, this 9th day of September 2005.

*[signature]*
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

---

[1] First Data's entire reply brief is replete with new issues and argument. The Court will not address these issues because "[t]he scope of the reply brief must be limited to addressing the arguments raised by the [response]. The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court." *See United States v. Feinberg,* 89 F.3d 333, 340-341 (7th Cir.1996). However, it bears mentioning that the Court has reviewed and considered these arguments and finds them to be both irrelevant to the primary jurisdiction analysis and without legal merit.