IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STATON HOLDINGS, INC. d/b/a STATON WHOLESALE and ALL EIGHTS, L.L.C d/b/a INFOEIGHTS, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. |
| v. | § § | 3:04-CV-2321-P |
| FIRST DATA CORPORATION, | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is:

1. Defendant's Motion for Summary Judgment, filed February 16, 2006,[1]

2. Defendant's Motion to Exclude Testimony by Loren Stocker and Strike Plaintiffs' Expert Disclosure, filed February 16, 2006,[2]

3. Plaintiffs' Motion to File Supplemental Expert Report, filed March 10, 2006,[3]

4. Plaintiffs' Motion for Leave to File Surresponse to Defendant's Motion for Summary Judgment, filed April 11, 2006,[4] and

5. Plaintiffs' Motion for Continuance, filed April 11, 2006.[5]

---

[1] Plaintiffs filed a Response on March 10, 2006, and Defendant filed a Reply on March 27, 2006.

[2] Plaintiffs filed a Response on March 10, 2006, and Defendant filed a Reply on March 27, 2006.

[3] Defendant filed a Response on March 27, 2006, and Plaintiffs filed a Reply on April 11, 2006.

[4] Defendant filed a Response on April 18, 2006

[5] Defendant filed a Response on April 18, 2006, and Plaintiffs filed a Reply on April 21, 2006.

After careful consideration of the Parties' briefing, the evidence, and the applicable law, the Court hereby GRANTS (1) Defendant's Motion for Summary Judgment, DENIES AS MOOT (2) Defendant's Motion to Exclude Testimony by Loren Stocker and Strike Plaintiffs' Expert Disclosure, DENIES AS MOOT (3) Plaintiff's Motion to File Supplemental Expert Report, GRANTS (4) Plaintiffs' Motion for Leave to File Surresponse, and DENIES AS MOOT (5) Plaintiffs' Motion for Continuance.

## I.  Background

Staton Holdings, Inc. d/b/a Staton Wholesale ("Staton") is a business based in Dallas, Texas. Since the early 1990s, Staton has been the assignee and exclusive end user subscriber of the toll-free telephone number (800) 888-8888. In April 1998, when the 888 prefix became available, Staton requested and was assigned the number (888) 888-8888 (hereinafter the "All Eights Number"). Staton had rights to use both numbers pursuant to an agreement with MCI Worldcom Communications, Inc. ("MCI"). (Compl. at 2, ¶ 7.)[6]

In April of 2000, Staton incorporated a company called All Eights, L.L.C. d/b/a InfoEights ("InfoEights"), a company through which it intended to earn revenue using the All Eights Number as the focal point of its marketing campaign. As part of its business, Staton intended to assign to InfoEights the rights to use the All Eights Number. To accomplish this assignment, Staton removed the number from daily use as its primary toll-free customer fax number. Staton began using a new fax number beginning with its 2001 catalog, using the All Eights Number only as a secondary fax number pending its transfer to InfoEights. (*Id.* at 3-4, ¶¶

---

[6] Complaint or "Compl." refers to Plaintiffs' Fifth Amended Original Complaint, filed with this Court on December 30, 2005.

9-12.)

On Friday, October 27, 2000, for reasons that are not clear, the All Eights Number was disconnected from Staton. Four days later, on Tuesday, October 31, 2000, Teri Ring, an employee of Defendant First Data Corporation (hereinafter "First Data" or "Defendant"), called and requested that MCI assign the All Eights Number to First Data. Ms. Ring stated that the All Eights Number was not in use. A representative of MCI states that she checked the internal database and, finding that the number was on hold status and no longer rang to Staton, internally assigned the All Eights Number to First Data on November 2, 2000. As the number was in hold status, MCI claims that it waited 60 days to officially release the number to First Data on January 3, 2001. (*Id.* at 4-5, ¶ 13; Def.'s Mot. Summ. J. at 5-6.)

On April 10, 2001, First Data completed a Reponsible Organization Change Authorization Form ("RespOrg Change Form"), changing the service provider of the All Eights Number from MCI to Sprint. On June 14, 2001, Plaintiffs became aware that the All Eights Number was no longer in their possession. Upon such discovery, Staton called MCI and Sprint, seeking to regain the number. MCI and Sprint subsequently communicated with Defendant. First Data, however, declined all requests to relegate its rights to the number. (Compl. at 7-9; Def.'s Mot. Summ. J. at 6-8.)

As a result, on December 19, 2002, Staton filed a formal complaint with the Federal Communications Commission ("FCC") against MCI and Sprint regarding the improper disconnection and transfer of the All Eights Number. On April 21, 2003, Staton filed a similar complaint with the FCC against First Data. In June of 2003, the FCC dismissed the complaint

against First Data for lack of jurisdiction. (App. Def.'s Mot. Summ. J. at 220-224.)[7] Thereafter, in September of 2003, MCI answered the complaint filed against it and admitted that it disconnected the All Eights Number as a result of "inadvertent human error." (*Id.* at 228.)

On May 12, 2004, the FCC issued an order holding that MCI had negligently disconnected the All Eights Number, but that there was no evidence of willful misconduct. (App. Def.'s Mot. Summ. J. at 265-274.) The FCC ordered MCI to pay Staton $1,000. The FCC noted that there was no evidence in the record to suggest that First Data was "anything other than a completely innocent third party." (*Id.* at 273.) The FCC further concluded that Staton had failed to prove that Sprint engaged in any misconduct. (*Id.* at 272.)

On September 7, 2004, Staton and InfoEights (collectively "Plaintiffs") filed the instant lawsuit against First Data in state court and the case was subsequently removed to this Court. Plaintiffs contend that First Data engaged in a scheme to unlawfully obtain rights to the All Eights Number. As such, Plaintiffs bring claims for liability under contract/ express assumption of liability, fraud, conversion, tortious interference with existing and prospective contract, and violations of FCC federal regulations and policy. (Compl.) Defendant now moves for summary judgment on all claims.

## II.   Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no

---

[7] The Order also dismissed Staton's claims against Mills Fleet Farm, Inc., a party joined in the original complaint filed with the FCC.

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323.

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless she provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 248-50; *Abbott v. Equity Group*, 2 F.3d 613, 619 (5th Cir. 1993). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Finally, the Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which

the evidence supports his or her claim." *Id.* A party may not rely upon "unsubstantiated assertions" as competent summary judgment evidence. *Id.*

III.   **Initial Arguments**

Defendant first argues that Plaintiffs' claims against them should be dismissed because of a previous judicial admission. In the alternative, Defendant claims that the doctrines of res judicata and collateral estoppel preclude this Court from finding Defendant liable. The Court will address these arguments before reaching the merits of the underlying claims.

   a.   **Judicial Admission**

On October 14, 2003, Walter Staton, former Chief Operating Officer of Staton, wrote a letter to Lynn Vermillera and David Hunt of the FCC, apparently after a status conference regarding his pending complaint before the FCC. In such letter, Mr. Staton stated, in relevant part:

> The first issue is the one that I heard clearly and explicitly at the status conference. *I agree that [First Data] is an innocent victim* of these unfortunate events, as is Staton Wholesale. If this concept will weigh heavily when the FCC renders its decision, I would plead to the two of you and to the other decision makers at the Commission to consider which of these entities has been victimized to a greater extent.

(App. Def.'s Mot. Summ. J. at 259.) (emphasis added). Defendant argues that this statement to the FCC represents a judicial admission. According to Defendant, Plaintiffs have admitted that First Data is not at fault for disconnecting the All Eights Number from Staton, thereby precluding litigation on the issue of First Data's liability.

"A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's Lousiana, Inc.*, 244 F.3d

474, 476 (5th Cir. 2001). By contrast, an ordinary evidentiary admission is merely a statement of assertion or concession made for some independent purpose, and it may be controverted or explained by the party who made it. *Id.* at 476-77. In *Martinez*, the Fifth Circuit found a judicial admission where a statement by plaintiff's counsel conceded the issue of physical injury such that it caused defendant to discontinue discovery on that issue. *Id.* at 477. The court found no other independent purpose behind the admission, and allowing the plaintiff to submit evidence contradicting the prior statement would prejudice the defendant because they had no reason to conduct discovery on that point. *Id.* In the present case, Plaintiff did not rely on Mr. Staton's statement in constructing its defense, the issue of First Data's liability was the primary subject of discovery. Furthermore, to qualify as a judicial admission the statement must be "deliberate, clear, and unequivocal . . . such that giving it conclusive effect meets with public policy." *Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319, 329 (5th Cir. 2001) (citing *Griffin v. Superior Ins. Co.*, 338 S.W.2d 415, 419 (Tex. 1960)). In his letter to the FCC, it appears that Mr. Staton conceded the innocence of First Data only to facilitate a favorable ruling in the FCC action involving Sprint and MCI. The statement seems to be based on what was discussed in the status conference rather than a statement of the belief of Mr. Staton. The character of the admission was not such that it would be equitable to preclude litigation on the issue in subsequent proceedings. Additionally, Mr. Staton's letter was written in October of 2003, shortly after the sworn statement given by Denise Nilson. Plaintiffs maintain that Nilson's affidavit is the first evidence they had that First Data may have engaged in fraudulent activity in obtaining the All Eights Number. Thus, at the time Mr. Staton wrote the letter, First Data's role in the

transfer of the number was likely unclear to Staton. But regardless, "judicial admissions are not conclusive and binding in a separate case from the one in which the admissions were made." *Universal Am. Barge Corp. v. J-Chem*, 946 F.2d 1131, 1142 (5th Cir. 1991). As the admission is sufficiently disputed by the summary judgment evidence, and because it was made in a separate proceeding, the Court finds that Mr. Staton's statement is not a sufficient basis to determine the liability of First Data.

    b.    **Preclusion Doctrines**

On May 12, 2004, the FCC issued its final order, finding that MCI had negligently disconnected the All Eights Number, but that there was no evidence of willful misconduct. (App. Def.'s Mot. Summ. J. at 270.) The FCC further found no claims could be maintained against Sprint and that there was no evidence in the record to suggest that First Data was "anything other than a completely innocent third party." (*Id.* at 273.) Defendant argues that this holding precludes re-litigation of the issue as First Data's liability has already been determined in a binding judgment.

Res judicata, or claim preclusion, bars re-litigation of a claim that a party raised or could have raised in a prior adjudication. *Smith v. Waste Mgmt. Inc.*, 407 F.3d 381, 386 (5th Cir. 2005). "A prior judgment is given res judicata effect if the parties are identical in both suits, the prior judgment has been rendered by a court of competent jurisdiction, there is a final judgment on the merits, and the same cause of action is involved in both cases." *Gibson v. United States Postal Serv.*, 380 F.3d 886, 889 (5th Cir. 2004). While the Supreme Court has held that an agency adjudication can have a preclusive effect in later judicial proceedings, *United States v. Utah*

*Const. & Mining Co.*, 384 U.S. 394, 422 (1966), Defendant cannot establish the showing necessary to apply res judicata in the present case. The parties are not identical or in privity; at the time the FCC issued its order First Data had been dismissed for lack of jurisdiction. In addition, the cases do not present the same cause of action. The case before the FCC involved Plaintiffs' allegations that MCI and Sprint violated certain sections of a telecommunications statute.[8] (App. Def.'s Mot. Summ. J. at 265- 274.) The claims presently before this Court are primarily state law claims sounding in tort, contract, and fraud; these claims could not have been brought in the FCC action. Thus, res judicata is inapplicable.

But Defendant also argues that the FCC finding should qualify as collateral estoppel. Collateral estoppel, or issue preclusion, prohibits a party from re-litigation of an issue of fact or law only if (1) the issue at stake is identical to the one involved in the prior action; (2) the issue has been actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that earlier action. *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 397 (5th Cir. 2004). "When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 868 (5th Cir. 2000) (internal citations omitted). Assuming *arguendo* that the issues are identical, the second element is not met because Staton did not have "a full and fair opportunity" to actually litigate the issue in the prior action. *See Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th

---

[8] In particular, the claims before the FCC arose under the Communications Act of 1934, as amended by the Telecommunications Act of 1996 ("the Act"), 47 U.S.C. § 151 *et seq.*

Cir. 1982). Staton joined First Data in the FCC action on April 21, 2003; the FCC dismissed First Data on June 27, 2003. A mere two months in the lawsuit was not sufficient to conduct adequate discovery and flesh out the issues surrounding First Data's liability. Furthermore, the third element is not satisfied as the issue of First Data's liability was not a necessary part of the FCC judgment. On May 27, 2004, the FCC found that MCI was negligent but that Staton had not proven willful misconduct. The FCC also found that Staton had failed to prove any claims against Sprint. In passing, the FCC stated "[t]here is no evidence in this record to suggest that [First Data] is anything other than a completely innocent third party." (App. Def.'s Mot. Summ. J. at 273.) However, this statement had no bearing on the resolution of the claims properly before them, the FCC only had jurisdiction to decide the liability of the common carriers MCI and Sprint. As the issue was not fully litigated and the FCC did not have jurisdiction over First Data, this statement cannot have preclusive effect.

### IV.   Causes of Action

#### a.   Conversion

"Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with the true owner's rights." *Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 762 (Tex. App.--Texarkana 1996), *aff'd in part and rev'd in part*, 939 S.W.2d 146 (Tex. 1997). Under Texas law, conversion is established by proving that: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner; and (3) defendant refused plaintiff's demand for the return of the property. *See In re*

*Aurora Natural Gas, L.L.C.*, 312 B.R. 318, 328 (N.D. Tex. 2004); *Russell v. American Real Estate Corp.*, 89 S.W.3d 204, 210 (Tex. App.--Corpus Christi 2002, no pet.).

In order to show wrongful exercise over the All Eights Number, Plaintiffs attempt to show that Defendant obtained the number by fraudulent misrepresentations. This claim is based, in large part, on Plaintiffs' assertion that Teri Ring of First Data gave conflicting stories on October 31, 2000, and in June of 2001. Plaintiffs claim that they discovered this inconsistency when they read Denise Nilson's affidavit in September of 2003. In such affidavit, Ms. Nilson, an employee of MCI, states that Teri Ring told her that First Data called the All Eights Number, found it was not in use, and called MCI to reserve it. (App. Def.'s Mot. Summ. J. at 253.) Plaintiffs claim that this statement is different from what Ring allegedly told MCI in June of 2001. In June of 2001, Plaintiffs believed that Teri Ring acquired the All Eights Number after seeing it on a list of unused 888 phone numbers. According to the call log of Becky Jones,[9] Teresa Barker of MCI stated that MCI cancelled the All Eights Number in October of 2000 "which basically put the number back in the list of unused 888 numbers. [First Data] saw it wanted it and took it [sic]." (App. Def.'s Mot. Summ. J. at 148.) However, this is Teresa Barker's statement; it cannot be fairly attributed to Ms. Ring or First Data. The call log more reasonably reflects that the statements were made by Teresa Barker or someone else at MCI. Thus, there are no inconsistent statements because there is no evidence Ms. Ring or First Data ever said that they acquired the All Eights Number after seeing it on an unused number list. As

---

[9] Becky Jones, a former employee of Staton, is now deceased, and Defendant claims such call log is inadmissible hearsay. But as discussed above, even if the evidence were admissible the content of the call log does not support Plaintiffs' claims of fraud.

**Memorandum Opinion and Order**
**3:04-CV-2321-P**
**Page 11 of 20**

will be discussed later in more detail, without evidence that Defendant made inconsistent statements, Plaintiffs cannot show a material fact issue as to whether Defendant assumed control over the property in a fraudulent or unauthorized manner. As such, Plaintiffs fail to present evidence on the second element of a conversion cause of action and summary judgment is proper.

      **b.**      **Tortious Interference**

To establish a claim for tortious interference with an existing contract, Texas law requires that (1) the plaintiff had a valid contract; (2) the defendant willfully and intentionally interfered with the contract; (3) the interference was a proximate cause of the plaintiff's injury; and (4) the plaintiff incurred actual damage or loss. *Prudential Ins. Co. v. Fin. Rev. Servs.*, 29 S.W.3d 74, 77-78 (Tex. 2000). Plaintiffs appear to have had a valid contract with MCI. But as will be discussed in more detail later, the evidence submitted by Plaintiffs does not raise an inference that Defendant engaged in fraudulent conduct. Without any evidence of fraud by First Data, Plaintiffs are unable to show that any interference with that contract was willful or intentional. Additionally, Plaintiffs are unable to show that Defendant knew there was a contract at the time it acquired the All Eights Number; rather, the evidence shows the number was already disconnected when First Data initially called MCI. Denise Nilson of MCI states that she verified that the All Eights Number had been disconnected before reserving it for First Data. (App. Def.'s Mot. Summ. J. at 253.) In light of this evidence, Plaintiffs cannot establish that Defendant knew of an existing contract between MCI and a customer. Thus, any interference that occurred could not be characterized as willful or intentional, as Plaintiffs cannot show that Defendant even knew there was a contract with which it could interfere.

Furthermore, Plaintiffs cannot support each element of a claim for tortious interference with a prospective contract. This cause of action requires a showing of (1) a reasonable probability the plaintiff would have entered a contractual relationship with a third-party, (2) an intentional and malicious act that intervened with the formation of that relationship, (3) the defendants lacked privilege or justification to interfere, and (4) actual damage, loss, or harm resulted from the defendant's interference. *Allied Capital Corp. v. Cravens*, 67 S.W.3d 486, 490 (Tex. App.--Corpus Christi 2002, no pet.); *see also Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). Plaintiffs have not submitted evidence that would suggest a "reasonable probability" that they would have entered into a contractual relationship with another party, the evidence merely shows Plaintiffs were trying to find someone to buy the All Eights Number. There is no suggestion that any deal was pending or even likely to occur in the future. Furthermore, the Texas Supreme Court has found that in order to be liable for tortious interference with a prospective contract the "plaintiff must prove that the defendant's conduct was independently tortious or wrongful." *Sturges*, 52 S.W.3d at 726. Plaintiffs fail to show that Defendant committed any type of fraudulent or wrongful conduct, thus Plaintiffs fail to prove that Defendant's conduct was independently tortious or wrongful. For these reasons, summary judgment is appropriate.[10]

### c. Fraud

In Texas, fraud occurs when: (1) the defendant misrepresented a material fact; (2) the

---

[10] As Plaintiffs are unable to present a prima facie case of conversion or tortious interference, the statute of limitations arguments advanced by Defendant are rendered moot.

defendant knew the material representation was false or made it recklessly without any knowledge of its truth; (3) the defendant made the false material representation with the intent that it should be acted upon by the plaintiff; and (4) the plaintiff justifiably relied on the representation and thereby suffered injury. *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 566 (5th Cir. 2005) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Furthermore, "a fraud cause of action exists where the false representation was made with the intent of reaching and deceiving a third person and thereby caused that third party injury; privity is not required between the fraudfeasor and the person he is trying to influence to establish a fraud claim." *In re Enron Corp Sec.*, 388 F. Supp. 2d 780, 784 (S.D. Tex. 2005) (citing *Ernst & Young*, 51 S.W.3d at 578-80).

Plaintiffs' Complaint provides a comprehensive account of an allegedly deceptive scheme orchestrated by Defendant. Plaintiffs allege that Defendant intentionally made material misrepresentations to MCI and Sprint, with the desire that such third parties act in reliance and thereby cause injury to Plaintiffs. Further, Plaintiffs allege that Defendant concealed its prior fraudulent conduct in conversations with MCI and Sprint, causing further injury to Plaintiffs. (*See* Compl.)

But to establish fraud, Plaintiffs must show detrimental reliance on representations made by First Data. Defendant's statements to MCI in October of 2000 were not intended to be relied upon by Plaintiffs, and Plaintiffs have not submitted any evidence that would suggest they relied on these statements. Thus, Plaintiffs have to show reliance on statements made in June of 2001 to establish their claim. But, the Court finds that the statements Plaintiffs claim reliance upon

cannot be fairly attributed to Teri Ring or First Data. Plaintiffs contend that they were misled by First Data in June of 2001 when Teri Ring stated that they saw the All Eights Number on a list of unused numbers and acquired it from that list. But there is no credible evidence that Teri Ring made this statement. Becky Jones' call log, even assuming it is not precluded by hearsay, does not at all suggest that Teri Ring made the statements at issue. Becky Jones records that Teresa Barker of MCI told her that "MCI cancelled the 888 number . . . which basically put the number back in the list of unused 888 numbers." (App. Def.'s Mot. Summ. J. at 148.) Becky Jones then writes that "[First Data] saw it wanted it and took it [sic]." (*Id.*) It is unclear whether this last statement is Becky Jones' own deduction or if Teresa Barker made the statement.[11] Even assuming Teresa Barker made the statement, there is nothing in the evidence that suggests the remark is anything more than Barker's own opinion. There is no evidence that Teresa Barker talked to Teri Ring or anyone else at First Data prior to making this statement. For these reasons, the statement cannot be reasonably attributed to First Data. Despite Plaintiffs' assertions to the contrary, the notes in this call log in no way suggest that First Data said anything to mislead Plaintiffs. As such, Plaintiffs cannot show reliance on statements by First Data and their fraud claim necessarily fails. Furthermore, as the June 2001 statements cannot be attributed to First Data, Plaintiffs cannot show that First Data ever made inconsistent statements as to how it acquired the All Eights Number.

Without a showing that First Data made inconsistent statements, the additional evidence

---

[11] Teresa Barker was not deposed, or if she was, her deposition testimony was not submitted to the Court. Becky Jones is deceased, and was not able to clarify this statement prior to her death. Thus, there is no way to know whether Ms. Barker made this statement.

on which Plaintiffs rely is insufficient to show fraud. Plaintiffs rely heavily upon the fact that Teri Ring called MCI to inquire about the All Eights Number a mere four days (two business days) after the number was disconnected. However, this in itself fails to raise a fact issue in light of the record. The undisputed evidence reveals that Ms. Ring had been interested in the All Eights Number for several months and had called periodically to check on its availability. (App. Pl.'s Resp. at 91.) This testimony also explains how Ms. Ring knew MCI was the RespOrg on the number. The timing of the call, and the fact that MCI was called first, does not establish fraud on the part of First Data. Plaintiffs also appear to rely on MCI's decision not to allow the All Eights Number to go into the spare pool, instead directly assigning the number to First Data. But the evidence shows that the number had already been disconnected by MCI at the time Ms. Ring called and there is no evidence that First Data was privy to the internal operations of MCI. Teri Ring testified that she was told the number would be on hold for a certain period of time; at the expiration of that period Ms. Ring sent an e-mail to MCI expressing her continued interest. (*See id.* at 96-97, 101, 103, 131.) MCI's handling of the All Eights Number does not imply fraud on the part of First Data.

     Plaintiffs further allege that First Data's RespOrg change from MCI to Sprint and subsequent refusal to return the All Eights Number is evidence of wrongdoing. But the record suggests otherwise. The RespOrg change from MCI to Sprint occurred more than four months after the All Eights Number was in the account of First Data. (*Id.* at 153.) Plaintiffs fail to explain why this transaction would rationally support an inference of fraud. The evidence shows that the All Eights Number was primarily being used by First Data's customer Mills Fleet Farm

at the time the RespOrg was changed; Plaintiffs have submitted no evidence showing that the decision to change to Sprint was actually made by First Data rather than Mills Fleet Farm. Moreover, the fact that First Data did not return the All Eights Number more than six months after it obtained such number is not evidence of fraud. First Data (and the FCC) believed that MCI disconnected the number by mistake. First Data's refusal to return valuable property that it believed it rightfully owned is not an indication that they committed fraud in acquiring the number. In sum, the Court finds that the evidence submitted by Plaintiffs is insufficient to even raise an inference of fraud by First Data. As there is no fact issue on the fraud claim, summary judgment is appropriate.

      **d.**      **Contract**

Plaintiffs' breach of contract claim is based on the theory that Defendant expressly assumed liability for Plaintiffs' damages when it signed the RespOrg Change Form on April 10, 2001. It is undisputed that Plaintiffs are not a party to the RespOrg Change Form; however, "[a] third party may recover on a contract made between other parties [ ] if the parties intended to secure a benefit to that third party, and [ ] if the contracting parties entered into the contract directly for the third party's benefit." *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002). "Under Texas law, a non-party to a contract has a heavy burden when it claims third-party beneficiary status." *Missouri Pac. R.R. Co. v. Harbison-Fischer Mfg. Co.*, 26 F.3d 531, 540 (5th Cir. 1994). "[A] contract will not be construed as having been made for the benefit of a third person unless it clearly appears that this was the intention of the contracting parties." *Talman Home Fed. Sav. v. Am. Bankers Ins.*, 924 F.2d 1347, 1351 (5th Cir. 1991).

"Any intent of the contracting parties to benefit a third party is to be derived solely from the language of the contract, 'within the four corners of the instrument.'" *Walker v. State Farm Lloyd's*, No. 3:03-CV-1514-R, 2004 WL 1462200, at *3 (N.D. Tex. 2004) (citing *Talman*, 924 F.2d at 1351). The form on which Plaintiffs premise the breach of contract claim is a one page standard form generated by Sprint, authorizing Sprint to become the responsible organization for the toll-free phone number that is listed in the provided blanks. (*See* App. Pl.'s Resp. at 153.) Plaintiffs rely on a particular provision contained in the form which states that Defendant "assumes all liability for the misappropriation of traffic of any other end user subscriber with regard to" the All Eights Number. (App. Pl.'s Resp. at 153.) While Staton is not mentioned anywhere on the form, Plaintiffs claim that they are an end user subscriber and thus, an intended beneficiary because First Data, by signing the form, assumes liability for the misappropriation of traffic of "any other end user subscriber." (*Id.*) Plaintiffs claim that they are an end user subscriber, however, in their Complaint Plaintiffs allege that the All Eights Number was already taken from them by April of 2001 when the RespOrg Change Form was signed. Plaintiffs do not provide any evidence that Staton was an end user subscriber at the time the RespOrg Change Form was signed, rather, they characterize Staton as a "'prior' end user subscriber." (Pl.'s Resp. at 28.) As Plaintiffs cannot prove they were an end user subscriber at the time the contract was signed, they have failed their burden to show that the "contracting parties *made* the contract[] for the benefit of the third party and *intended* to benefit the third party at the time the parties entered into the contract[]." *Resolution Trust Corp. v. Kemp*, 951 F.2d 657, 662 (5th Cir. 1992) (emphasis in original). As such, the Court will not imply third party beneficiary status and

Plaintiffs' breach of contract claim fails.

    e.    **Violations of 47 C.F.R. § 52.101 et seq.**

In the Complaint, Plaintiffs claim that the "transfer of the rights to use the number (888) 888-8888 . . . was unlawful and in violation of The Comissions' toll-free number regulations, which are published in the Code of Federal Regulations at 47 C.F.R. section 52.101 et seq. . . . ." (Compl. ¶ 36.) The regulations cited by Plaintiffs were established by authority of the Communications Act of 1934, as amended by the Telecommunications Act of 1996 ("the Act"). 47 U.S.C. § 151 *et seq.* Defendant argues that the Act and regulations generally do not create a private right of action. *Greene v. Sprint Commc'ns Co.*, 340 F.3d 1047, 1051 (9th Cir. 2003) ("Congress did not say [in the Act] that . . . private persons may sue for violation of the *regulations*.") (emphasis in original). In response, Plaintiffs state that "it may be the case that 47 C.F.R. 52.101 may not convey a private right of action to Plaintiffs against Defendant, [but] Plaintiffs have not cited this regulation for this purpose." (Pl.'s Resp. at 30.) Instead, Plaintiffs claim that they cited these particular regulations to show that the transfer was unauthorized and illegal, and that Defendant's overall conduct was "more outrageous and indefensible." (*Id.* at 30-31.) Plaintiffs have made no showing that there is a private cause of action for the regulations cited in their Complaint and federal courts have routinely refused to imply such a right. *See, e.g.*, *Schnapper v. Foley*, 667 F.2d 102, 116-17 & n.8 (D.C. Cir. 1981). Defendant has pointed out an absence of material fact for trial and Plaintiff has failed to rebut this showing with competent summary judgment evidence. As such, summary judgment is appropriate on Plaintiffs' claim.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment in all respects. As such, Defendant's Motion to Exclude Testimony by Loren Stocker and Strike Plaintiffs' Expert Disclosure, and Plaintiff's Motion to File Supplemental Expert Report are both DENIED AS MOOT.[12] The arguments in the Surresponse did not alter the Court's opinion in this matter, but such arguments were considered, thus Plaintiffs' Motion for Leave to File Surresponse is GRANTED. Lastly, as summary judgment is granted, Plaintiffs' Motion for Continuance is DENIED AS MOOT.

**IT IS SO ORDERED.**

Signed this 16th day of May 2006.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

---

[12] The Court notes that it read the supplemental report of Loren Stocker, however, such report does not change the conclusions reached by the Court.